[Civ. No. 990. Fourth Appellate District.—December 7, 1932.]

THE CAROLINA PINES, INC. (a Corporation), Appellants, v. THE CATALINA PINES, a Copartnership, etc., et al., Respondents.

Lawrence M. Cahill for Appellants.

Ellis I. Hirschfeld for Respondents.

MORTON, J., *pro tem.*—Plaintiff, Rose P. Satterfield, on or about February 1, 1925, commenced doing a restaurant, cafe and tea-room business at 4619 Melrose Avenue in the city of Los Angeles, California, under the fictitious firm name and style of The Carolina Pines. In July, 1929, the business was incorporated as "The Carolina Pines, Inc.", a corporation, plaintiff owning all the stock, except two qualifying shares. She continued at that address until August, 1929, at which time she moved to 7315 Melrose Avenue, it being necessary that larger quarters be secured to accommodate her business. She specialized on certain recipes and food combinations which might generally be

termed Southern style meals, serving certain definite menus of food, with slight variations for each day of the week and at a fixed and definite charge of lunch fifty cents and dinner eighty-five cents. The business name of ''The Carolina Pines'' was prominently used, displayed and advertised inside and outside the premises and particularly by two large Neon signs on top of the building. On either side of the entrance was a large boxed pine tree and at both sides of the cashier's desk, a potted pine tree. A large oil painting of pine trees adorned the interior and the business name superimposed upon the design of a pine tree was printed on the menu cards and menu folders. The table and chairs were of a distinctive pattern, painted black and decorated with green. Two distinctive patterns of dishes were used, the waitresses wore distinctive calico and print dresses in assorted colors and the other girl employees wore characteristic dresses and uniforms. Plaintiff acted as hostess in the dining-room, wearing a pink organdie dress of a certain definite pattern and style. By reason of the characteristic devices, styles, symbols and contrivances and the quality, flavor and excellent preparation and service of foods she alleges that the attractive reputation and patronage of her business extended beyond the city of Los Angeles and throughout a large area, particularly the counties of Los Angeles, Riverside, San Bernardino, Kern, Ventura, Orange and San Diego.

On or about August 15, 1929, the defendants, Jacob Rosenberg and Mary Rosenberg, offered and asked to purchase from plaintiffs the lease on the then occupied premises at 4619 Melrose Avenue, together with certain of the furniture, furnishings, fixtures and equipment located therein, it being understood that the goodwill and name of said business was not included as plaintiffs were continuing the business at the new and larger building located at 7315 Melrose Avenue. It is alleged that the defendants promised and agreed that in the event the sale was consummated they would adopt and use a name other than ''The Carolina Pines'' and one not resembling that name in any way.

On or about September 1, 1929, they abandoned the contemplated purchase of the lease, furnishings, etc., from plaintiffs, stating the deal was too restrictive, particularly as to use of a trade name. About December 3, 1929, they

opened and commenced to operate a restaurant, tea-room and cafe business at 2525–2527 West Seventh Street in the city of Los Angeles, under the fictitious firm name and style of "The Catalina Pines". Two large Neon signs on top of the building display this name, on the menu cards and menu folders the name is superimposed over a pine tree and the same design appears on the windows. At the entrance are two large pine trees, the chairs and tables are almost identical and painted black and decorated with green in close imitation of plaintiffs'. The dishes used are identical in pattern with plaintiffs', the same food combinations and daily menus on the same day of the week are served and are listed under practically identical language. Defendants' waitresses wear practically identical dresses of calico and print in assorted colors as worn in plaintiffs' place of business, and also the uniforms of the other girl employees are identical. Defendant Mary Rosenberg acts as hostess in the dining-room, always wearing a pink dress of a pattern and style as worn by plaintiff. It is contended by plaintiffs that this imitation and duplication of their business by defendants is for the purpose of deluding and deceiving the public generally and appropriating to defendants' use and benefit the business, patronage, goodwill and reputation of plaintiffs' business.

Defendant, Mary Rosenberg, in her affidavit admits ownership of the business designated as "Catalina Pines"; states it is approximately five miles from plaintiffs' place of business; alleges she has certain sums of money invested in Neon electric signs, cuts and menus; that a statement is printed daily on her menus which reads: "Note: Catalina Pines has no connection with any other establishment in California," or "Note: Catalina Pines has no connection with any restaurant, tea-room, or cafe in the entire world." Further she alleges her business to be mainly that of steady customers of that section; that her furnishings, dishes and foods are of standard quality and type; that her waitresses without instructions from her, wear their own dresses as they see fit; that she does not wear a pink organdie dress; that she does not intend or desire to deceive the public and in fact is not deceiving the public or injuring the business of plaintiffs. ■ A temporary injunction was asked for by plaintiffs during the pendency of this action, enjoining

defendants from using the trade name "The Catalina Pines" or any name, phrase or device in any manner resembling or imitating, whether by sound, appearance or spelling, the name or phrase, "The Carolina Pines" and continuing the imitation and duplication complained of.

The trial court held "that the order sought by plaintiffs, restraining defendants from the use of the trade name set forth in said order to show cause, would, if granted, constitute a mandatory injunction and that, therefore, this is not a proper case for the granting of a preliminary or temporary injunction". Plaintiffs appealed and the sole question involved is whether the relief sought in the trial court would constitute a mandatory injunction.

The allegations of the pleadings and the statements in the affidavit, which must be taken as the facts for the purpose of this proceeding, indicate a case of unlawful business competition. The commercial life of the country can only develop under a principle of fair and honest dealing. Irrespective of the question of the solvency or insolvency of the offending party, when one merchant with studied effort and imitation endeavors to deceive the public into believing that in buying his goods they are receiving the goods of another merchant who through honest effort has established a reputation and public demand for his product, then the law must step in and under its equity jurisdiction restrain the unfair practices and imitation of the pretender. A court of equity will not permit such deception to continue. "By device defendant is defrauding plaintiff of its business. He is stealing its good will, a most valuable property, only secured after years of honest dealing and large expenditures of money; and equity would be impotent, indeed, if it could contrive no remedy for such a wrong." (*Weinstock, Lubin & Co.* v. *Marks,* 109 Cal. 529, at 539 [42 Pac. 142, 145, 50 Am. St. Rep. 57, 30 L. R. A. 182].) Further at page 537:

"In *Celluloid Mfg. Co.* v. *Cellonite Mfg. Co.,* 32 Fed. 94, 97, Justice Bradley of the Supreme Court of the United States, in speaking to the question of similarity in name, said: 'It was not identical with the plaintiff's name. That would be too gross an invasion of the complainant's rights. Similarity, not identity, is the usual recourse when one party seeks to benefit himself by the good name of another.

What similarity is sufficient to effect the object has to be determined in each case by its circumstances. We may say generally that a similarity which would be likely to deceive or mislead an ordinary unsuspecting customer is obnoxious to the law.' ''

Considering now the mandatory injunction feature of the issue, we find in *Jaynes* v. *Weickman*, 51 Cal. App. 696, at 699 [197 Pac. 672, 673], the court said:

''The injunctive features of the decree under consideration here enjoin the appealing defendants from continuing to do certain things. An order or decree restraining the further continuance of an existing condition does not take on the character of a mandatory injunction merely because it enjoins the defendants from continuing to do the forbidden acts. An injunction that restrains the continuance of an act or series of acts may be just as much a preventive of prohibitory injunction as one that restrains the commission of an act. (*State* v. *Superior Court*, 39 Wash. 115 [80 Pac. 1108, 109 Am. St. Rep. 867, 4 Ann. Cas. 229, 1 L. R. A. (N. S.) 554] ; *United Railroads* v. *Superior Court*, 172 Cal. 85–87 [155 Pac. 463], and cases there cited.)

''Appellants, contrary to the injunctive inhibitions, are continuing to carry on their business under the proscribed trade name. They are not enjoined from engaging in the transfer business in the city of Los Angeles or elsewhere. What they are enjoined from doing is to use in their business the interdicted trade name. It is true that, in order to carry on their business in a manner conformable to the injunctive features of the judgment, they must remove the forbidden trade name or names from their trucks, from the entrance to their place of business, and from their display advertising signs; and it also is true that these are affirmative acts. But the affirmative acts necessary to be done by defendants in order to continue the transaction of their business without disobeying the injunctive features of the judgment are but acts that are necessary to effectuate the principal purpose of the injunction, which is to forbid further infringement upon plaintiff's right to the exclusive use of the business name that she had adopted before the defendants entered the field of competition.''

Denying respondents the continued use of the name ''Catalina Pines'' and the pine tree emblems on the windows,

menus and menu folders is not requiring any material affirmative action. They can carry on their business in a legitimate manner and without the artifice in practice now, by which it appears an effort is being made to unjustly obtain a portion of appellants' business. From the allegations of the complaint and respondents' affidavit in opposition thereto, we are convinced that appellants were entitled to a temporary injunction, restraining the continuance of the deception in name and symbols. A temporary injunction is proper where "It appears from positive averments that respondent was first in time in business and first in the selection of a combination of words as a designation of a business which he had established and conducted some six or seven years before appellants entered the field, and which business was extensive and to the development of which respondent had expended much time and devoted energy and doubtless some skill." (*Lutz* v. *Western Iron & Metal Co.*, 190 Cal. 554 [213 Pac. 962, 965].) See, also, *Dodge Stationery Co.* v. *Dodge*, 145 Cal. 380 [78 Pac. 879]; *Morton* v. *Morton*, 148 Cal. 142 [82 Pac. 664, 1 L. R. A. (N. S.) 660].

On the question of injunctive relief in a similar situation involving the restaurant business this court expressed itself as follows:

"It may be added that it is the purpose of the law to protect by registration or injunction the exclusive use of a name, symbol or sign of the ownership of a particular business." (*Hall* v. *Holstrom*, 106 Cal. App. 563 [289 Pac. 668, 671].)

Further, at page 572:

"The object of injunctive relief is to prevent injury, threatened and probable to result, unless interrupted. Why should a person be required to stand by and see his property impaired, before he may stay the hand of the person seeking to offend? Actual injury may be the best evidence of its own existence, but a person should not be compelled to abide the results of trespass for the purpose of obtaining evidence of its injurious effects. Wrongs which are the probable result of given means should be prevented, not awaited."

During the pendency of this action we feel the appellants are entitled to protection by law. The order appealed from is reversed and the trial court without further proceedings

is directed to enter an order granting plaintiffs' application for a temporary injunction enjoining defendants and each of them during the pendency of this action in the trial court, from using or continuing to use the name Catalina Pines, or any name, phrase or device in any manner resembling or sounding similar to the name, The Carolina Pines, and is further restrained from using the name Catalina Pines or any name, phrase or device similar thereto, superimposed on a pine tree in any manner resembling the sign or symbol used by appellants in connection with their business. Appellants are awarded judgment against respondents for their costs on this appeal.

Barnard, P. J., and Marks, J., concurred.