[Civ. No. 5516.  Third Appellate District.—April 15, 1936.]

FRANK E. POHL, Appellant, v. HARRY ANDERSON et al., Respondents.

Percy S. Webster and Roger B. Webster for Appellant.

Gumpert & Mazzera and C. H. Hogan for Respondents.

TUTTLE, J., *pro tem.*—Appellant seeks to enjoin respondents from unfair competition and to recover damages alleged to arise therefrom.  The case was tried by the court, and findings on all issues were made adversely to appellant, who now appeals from a judgment denying him any relief.

The trial court found that plaintiff, on or about May 1, 1928, established in the city of Tracy, California, a "drive-in" dispensing booth for the sale of drinks; that said booth was

shaped in the form of a giant orange, and was painted an orange color; that plaintiff advertised his fresh orange drinks through the medium of a great number of highway signs for ten miles in an easterly direction and sixteen miles in a westerly direction, said signs referring to the "Giant Orange"; that on June 1, 1929, defendants acquired and commenced the operation of a "drive-in" dispensing booth at a point about seventy-five yards immediately to the west of plaintiff's booth, and on the same side of the highway, said place of business being known as the "Jumbo Lemon", the booth being in the form of a lemon, and painted a lemon color; that in May, 1934, defendants erected a small sandwich and eating shop about two-tenths of a mile easterly from plaintiff, on the same side of the highway. Connected with this shop there was a drink dispensing booth in the form of a large orange sitting in a lattice-work basket.

The court found that "it was not true that said traveling public and/or customers of the plaintiff are misled into stopping at the defendants' booth, and/or purchasing drinks there, believing that they are stopping at, and/or patronizing the dispensing booth of plaintiff as advertised by him . . . ; that it is not true that all or any of the alleged acts of the defendants, or either of them, set forth in the complaint herein, diminished either the business or the profits of plaintiff".

Other findings were made to the effect that the acts of defendants in operating and advertising their business were not in imitation of plaintiff. In addition to hearing the evidence at the trial, the court visited the premises in question.

█ The sole ground urged for reversal is the insufficiency of the evidence to sustain the findings. It is said that: "No inflexible rule can be laid down as to what conduct will constitute unfair competition. Each case is, in a measure, a law unto itself. Unfair competition is a question of fact. . . . The universal test question is whether the public is likely to be deceived." (63 C. J., p. 414, sec. 112.) At the outset it may be pointed out that plaintiff proved no *exclusive right* to the use of the trade name "Giant Orange". In his closing brief appellant states that "the question of whether or not appellant is entitled to such exclusive use is not pertinent to the issues". He then quotes from 63 C. J. 391–393, as follows: "Relief will be afforded regardless of whether or not

deceptive words or marks are valid trade-marks. The cases are very numerous where relief will be afforded upon the ground of unfair competition against a deceptive use of generic or descriptive names and marks, personal, geographical, corporate, and other names, none of which are capable of exclusive appropriation as technical trade-marks.'' We are in accord with this general statement of the rule. Under such circumstances, the use of a similar name or the emblematic representation of that name may be some evidence of unfair competition, although the cause of action may not be predicated upon the infringement of an exclusive trade-mark or trade-name. This was the precise situation in the case of *Dunston* v. *Los Angeles Van etc. Co.*, 165 Cal. 89 [131 Pac. 115, 117], where it is said: ''As the judgment cannot thus be supported upon the theory of an invasion of an exclusive right to property in a trade-mark, the only ground for the support of the judgment is that which has come to be known as 'unfair trade dealing'. This is but a succinct statement of the principle that in the interest of fair commercial dealing courts of equity, where one has been first in the field doing business under a given name, will protect that person to the extent of making competitors use reasonable precautions to prevent deceit and fraud upon the public and upon the business first in the field. (*Spieker* v. *Lash,* 102 Cal. 38 [36 Pac. 362]; *American Waltham Watch Co.* v. *United States Watch Co.*, 173 Mass. 85 [73 Am. St. Rep. 263, 265, 43 L. R. A. 826, 53 N. E. 141]; *Shaver* v. *Shaver,* 54 Iowa, 208 [37 Am. Rep. 194, 6 N. W. 188]; *Newman* v. *Alvord,* 51 N. W. 189 [10 Am. Rep. 588].) But, it has been intimated, relief in such cases really rests upon the deceit or fraud upon which the later comer in the business field is practicing upon the earlier comer and upon the public. Like all other kinds of fraud and deceit this is not presumed but must be pleaded and shown. Since plaintiff had no exclusive property right by way of trade-mark in the use of the name, it follows that the mere similarity of names does not establish the fraud. It must be such a misuse of the name by advertising and soliciting as amounts to fraud, and without this proof no relief may be granted, for, as is said by the Supreme Court of the United States in *Delaware & Hudson Canal Co.* v. *Clark,* 13 Wall. 311 [20 L. Ed. 581]: 'True, it may be that the use by a second producer, in describing truthfully his product,

of a name or a combination of words already in use by another, may have the effect of causing the public to mistake as to the origin or ownership of the product; but if it is just as true in its application to his goods as it is to those of another who first applied it and who, therefore, claims an exclusive right to use it, there is no legal or moral wrong done. Purchasers may be mistaken, but they are not deceived by false representations, and equity will not enjoin against telling the truth.' The findings absolutely fail to show such fraud, imposition, or deceit. Since the use by the defendants of the similar name which they have selected is not forbidden by law, the use of it even for conspicuous advertising so long as the advertisements are true, is not a violation of any of plaintiff's rights. The fact that confusion to the business of the plaintiff has resulted from acts not in themselves illegitimate, of itself affords no ground for relief."

In the later case of *American Automobile Assn.* v. *American Automobile O. Assn.*, 216 Cal. 125 [13 Pac. (2d) 707, 715, 83 A. L. R. 699], the foregoing language is quoted with approval, and the California authorities bearing upon the question of unfair competition are reviewed.

The alleged unfair practices upon the part of respondents may be said to arise, not from *one* act, but from a combination of various features  As summarized by appellant, they consist in the prominent use of the equivalent of his trade name; the imitation of the architecture and dress of his dispensing booth and his color scheme, and the placing of these imitations in the line of travel toward appellant's place of business. ■ The trial judge viewed the premises, and what he saw was independent evidence upon which his findings might be predicated. (24 Cal. Jur., p. 921; *Preston* v. *Culbertson*, 58 Cal. 198; *Hatton* v. *Gregg*, 4 Cal. App. 537 [88 Pac. 592].) We have carefully examined all the features which appellant asserts were mere imitations of *his* place of business and *his* business methods, and we cannot say that there is no substantial evidence to support the finding to the effect that the public was not misled by respondents' acts. Furthermore, to reverse this judgment we must conclude that the record shows, as a matter of law, that defendants were guilty of fraud, imposition or deceit. (See Dunston case, *supra.*) Manifestly, we cannot reach this conclusion without

doing violence to the well-known rule covering the binding effect of the findings of the trial court upon issues of fact. The latter rule is more potent here than usual, due to the fact that the trial court actually saw the structures which it is claimed deceived the public and thus constituted unfair competition. The observation of our Supreme Court in the American Automobile Association case (cited above), would seem pertinent here: "Everyone who enters the field of competition desires and plans to draw custom from his competitors. Unless his acts are unlawful, his avarice is not actionable."

The judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 11, 1936.