[Civ. No. 4006. First Appellate District, Division One.—October 27, 1921.]

WILLIAM J. HOOPER et al., Respondents, v. PHILIP M. STONE et al., Appellants.

[1] NAME—ACQUISITION OF PROPRIETARY RIGHT IN—PROTECTION OF.—An exclusive proprietary right may be acquired in the name under which a business has been conducted, and such right may not be lawfully interfered with or obstructed; and this protection is not limited to business and trading corporations but is given to charitable, religious, and other societies.

[2] ID.—INCORPORATION BY SECEDING BODY—RIGHT TO USE NAME NOT ACQUISITION.—A seceding body cannot by incorporating under the name of the parent body thus acquire a right to the use of the name, the fact of incorporation being immaterial.

[3] ID.—RIGHT TO USE NAME—FACTIONAL RELIGIOUS SOCIETY DISPUTE —JURISDICTION.—The question as to which of two factions of a religious society is entitled to the use of a designated name is not one exclusively under the jurisdiction of the ecclesiastical courts, where there is no tribunal within that denomination to which an appeal can be taken, the manual of the mother church providing for local self-government.

APPEAL from a judgment of the Superior Court of Alameda County. Everett J. Brown, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. W. Taylor for Appellants.

E. J. Sinclair, Henry E. Ashmun and Sloss, Ackerman & Bradley for Respondents.

KERRIGAN, J.—This is a suit in equity brought to determine the right to the use of a name.

It appears from the complaint that plaintiffs are members of the Christian Science Society of the University of California. It is alleged that this society was founded and organized in 1907, and continuously since said time has been, and now is, an association formed for

1. Right of benevolent, fraternal or social order to protection against use of name, insigna, ritual, etc., by another organization, notes, Ann. Cas. 1918A, 245; L. R. A. 1915B, 1074.

the purpose of uniting the Christian Scientists in the University of California in closer bonds of Christian fellowship; of affording to the faculty and students of that institution so desiring opportunities to become familiar with Christian Science as taught by Mary Baker Eddy, the founder of the faith, by providing authorized Christian Science literature in the library, and by the doing of other acts to aid its members in becoming familiar with the teachings of the mother church. By further allegation it appears that since the time of its inception in 1907 the association had appropriated and assumed the name "Christian Science Society of the University of California," and that said association and the members thereof have been, and now are, the sole and exclusive owners and solely and exclusively entitled to the use of such name. It is claimed that the members of the association by diligent and continuous effort have built up from a small beginning a strong society widely known, the meetings of which are well attended, and that the Christian Science Society of the University of California is recognized by all Christian Science churches and organizations throughout the world as the authentic representative of the Christian Science movement in the University of California, and that it receives financial recognition and support from the mother church and other Christian Science organizations. It is charged that, notwithstanding the long and quiet use and enjoyment of the claimed name, the defendants, other than Frank C. Jordan, as Secretary of State of the state of California, well knowing such facts, did willfully and wrongfully and in utter disregard of the rights of said association assume and attempt to appropriate to their own use the same and identical name used by said association, with intent to deceive and defraud the public, and particularly the students, faculty, and alumni of said university, and to discredit the association of which plaintiffs are members, to its great damage and detriment. It is further charged that the defendants signed and filed articles of incorporation in the office of the county clerk of Alameda County under the claimed name, and subsequently presented a certified copy thereof to defendant Jordan, as Secretary of State, and requested him to file the same. By further allegation the plaintiffs allege that as members of said society they have accumulated a large

sum of money and securities, and that defendants will attempt to appropriate the same to their own use by their assumption and use of the name. The commission of other unlawful acts is charged, and equitable interposition for relief is prayed for.

By a second cause of action plaintiffs allege that they also presented to defendant Jordan, as Secretary of State, articles of incorporation under the claimed name, but that he refused to file the same on the ground that as the two different instruments were presented simultaneously, a proceeding should be instituted to determine the relative rights of the parties to the name. Injunctive relief is asked restraining defendants from the use of the name, and a mandatory injunction is prayed for directing defendant Jordan to file the plaintiffs' articles of incorporation, and that he be directed to issue a certificate of incorporation to said plaintiffs under the name, "Christian Science Society of the University of California."

Defendants interposed demurrers to each count of the complaint upon general grounds, among others, that such count does not state facts sufficient to constitute a cause of action against the defendants or any of them, and on the further ground that the court had no jurisdiction of the subject of the action attempted to be set up in either count of the complaint, as the matter so set up is solely one for the jurisdiction of the tribunals of the church named in the complaint.

The demurrers were overruled and defendants, answering, alleged in substance that they were for a long time prior to the date of the commencement of the action members of said society and entitled to all the rights and privileges of such membership, including the use of the name contended for. They then allege facts regarding the existence of a controversy in the society, the removal of one of its officers, the expulsion of three of its members, the abandonment by the majority faction, to which plaintiffs belong, of the objects and purposes for which the society had been formed, and an attempt to coerce the minority faction into a like abandonment of such objects and purposes. It is further recited that the minority faction composed of defendants and others called and held a meeting to reconstruct and re-establish the society as originally formed, and had elected

directors to form a corporation under the contested name, to which they claim they are entitled. Denial is made that defendants will attempt to appropriate the property accumulated by the plaintiffs.

No question is here presented as to accumulated property or the regularity of the removal or suspension of defendants, the sole question involved being which of the two factions is entitled to the use of the designated name.

It appears from the record that the parties hereto are members of the Christian Science faith and that all of them were members of the Christian Science Society of the University of California, an unincorporated religious association founded and organized in 1907 under authority of the by-laws of the mother church, the First Church of Christ, Scientist, in Boston, Massachusetts. The provision of the by-laws authorizing the formation of such a society provides that members in good standing with the mother church who are members of the faculty, instructors, or students in any university or college, can form and conduct a Christian Science organization at such university or college, provided its rules so permit. The object of such societies is for the purposes heretofore recited. The literature of such societies consists of the Bible and all the books written by Mrs. Mary Baker Eddy, and the literature which she founded and authorized. These various publications are exclusively issued and sold by the Christian Science Publishing Society. This society instituted an action in Massachusetts against the mother church, and in consequence the controversy in the society here involved arose. The majority faction, to which plaintiffs and respondents belonged, instituted in the society what may be termed a boycott against the periodicals issued and sold by the Christian Science Publishing Society for its action in suing the mother church. It also instructed its secretary to send out to the Christian Science churches and societies in California notice of its action in this regard. The secretary declined to do so and resigned his office. The majority faction then requested the officer known as the reader to resign her office, for the reason that she continued to distribute the periodicals issued by the publishing company. This she refused to do, and she was removed from office. Subsequently

certain members were expelled from the society by reason of the controversy.

Thereafter these members, who may be denominated as the minority faction, met for the purpose of organizing another society and incorporating the same under the same name as the society of which they were formerly members, claiming that the majority faction by its action had ceased to carry out the purposes for which such societies were organized.

Upon sufficient evidence the court found that the plaintiffs had not changed or attempted to change the society into an organization different from that which was originally formed; that plaintiffs constitute the majority faction in the society, which faction is continuing to hold meetings under the name "Christian Science Society of the University of California," and is holding itself out as the original and authentic society formed in 1907 and operated and conducted since that date for the objects and purposes as stated in the original by-laws of the organization and in accordance with the manual of the mother church.

As conclusions of law it is found that plaintiffs have the legal right to the exclusive use of the name contended for, and to an injunction restraining the defendants from using the same, and to a further injunction enjoining the filing by defendant Jordan, as Secretary of State, of the defendants' articles of incorporation under the claimed name, and directing him to file plaintiffs' articles and to issue to them a certificate of incorporation under such name.

Appellants here claim that their demurrer to the complaint should have been sustained.

[1] With reference to the general grounds relied upon in support thereof, it is sufficient to say that it is a well-established rule that an exclusive proprietary right may be acquired in the name under which a business has been conducted, and that such right may not be lawfully interfered with or obstructed. This protection is not limited to business and trading corporations but is given to charitable, religious and other societies (*Salvation Army* v. *American Salvation Army,* 135 App. Div. 268 [120 N. Y. Supp. 471]; *Grand Lodge K. P.* v. *Grand Lodge K. P.,* 174 Ala. 395 [56 South. 963]; *Benevolent & Protective Order of Elks* v. *Improved Order etc.,* 205 N. Y. 459 [Ann. Cas. 1915F, 639,

L. R. A. 1915B, 1074 [98 N. E. 756]; *International Committee of Y. W. C. A.* v. *Young Women's Christian Assn. of America*, 194 Ill. 194 [56 L. R. A. 888, 62 N. E. 551]).

[2] Nor does the fact, as suggested by appellants, that plaintiffs never incorporated their society alter the rule. A seceding body cannot by incorporating under the name of the parent body thus acquire a right to the use of the name, the fact of incorporation being immaterial (*Supreme Lodge K. P.* v. *Improved Order K. P.*, 113 Mich. 133 [38 L. R. A. 658, 71 N. W. 470]; *Modern Woodmen* v. *Hatfield*, 199 Fed. 270).

[3] Nor do we see any merit in the remaining objection that the question is one exclusively under the jurisdiction of the ecclesiastical courts. It is admitted that there is no tribunal within the Christian Science denomination to which an appeal could be taken, the manual of the mother church providing for local self-government.

And, finally, appellants insist that the evidence shows that respondents have abandoned the method for disseminating the teachings and promoting the tenets of the faith by their act in withdrawing their support from certain publications, and for that reason they are no longer entitled to the use of the claimed name. The findings of the court based upon sufficient evidence are otherwise, and conclude this question.

Judgment affirmed.

Waste, P. J., and Richards, J., concurred.